Harold Wayne CARTER, Petitioner–Appellant,

v.

Anthony C. NEWLAND, et al., Respondents–Appellees.

No. 00–17409.

D.C. No. CV–97–00660–GEB.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 10, 2001.

Decided Nov. 8, 2001.

Rawlinson, Circuit Judge, filed dissenting opinion.

---

Before REINHARDT, HAWKINS, and RAWLINSON, Circuit Judges.

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

2. "G," who asserted that molestations occurred frequently, had a physical examination in which no specific evidence of such acts was found. "A" asserted that she had been molested on only two occasions.

## MEMORANDUM [1]

Harold Wayne Carter appeals the district court's denial of his habeas petition in which he asserted ineffective assistance of counsel at his state trial. Carter was accused of molesting his daughter, "G", and his stepdaughter, "A". His conviction was based principally on the testimony of the two complaining witnesses, step-sisters who lived together in the same house.[2] At trial, "G" testified that she was regularly molested during the summer of 1991, that the molestations occurred "every day or every other day," and that they occurred only when Carter drove her in the Scout vehicle to feed the cattle on the ranch. Carter denied these accusations. He testified that the cattle were not fed during the summer because they were kept on an irrigated pasture, and that, accordingly, he could not have driven her out to feed the cattle during that time frame. Carter also said that he could not have driven her in the Scout as "G" claimed because it was inoperable and in need of repairs until December of 1991, and because Carter's mother had the only key to that vehicle. Carter's mother testified at the trial and corroborated these statements.[3]

According to affidavits filed in the District Court by Carter and his mother, both of them told Carter's attorney that other experienced ranchers could confirm that cattle feeding did not take place during the summer months.[4] Carter's mother also

3. While "G" testified that she was also molested on some occasions during early 1992, the credibility of her charges would be seriously undermined if her report regarding the summer of 1991 molestations were shown to be untrue.

4. Specifically, the affidavits assert that Tony Durr, a local rancher, could have testified that the cows were not fed hay in the summer, and Tom Hogan, a cowboy who lived on

states in her affidavit that she told the attorney that she had papers documenting the inoperative nature of the Scout vehicle and stating when it was repaired, but that the attorney refused to investigate or present this evidence. Moreover, according to her affidavit, Carter's mother told the attorney that there were also neighbors who could testify that the Scout vehicle was inoperable and that it remained unused in the same place all summer, but the attorney refused to investigate or to speak with these individuals as well.[5]

According to Carter's affidavit, in addition to failing to present evidence to corroborate Carter's defense with regard to the cattle feeding and the operability of the vehicle, Carter's counsel failed to obtain work records that would have shown that Carter could not have abused "G" "every day or every other day" during the summer as she claimed. "G" testified at the trial that these daily or bi-daily incidents took place in the afternoon hours. However, Carter's affidavit states that his work records show that he was working regularly at River City Construction Company from 5:00 a.m. until 5:30 or 6:00 p.m. during the entire summer. Business records that corroborated this testimony would have provided strong evidence in support of Carter's claim of innocence and would have cast substantial doubt on the veracity of "G's" testimony.

The affidavits introduced in the District Court also assert that Officer Richter, the investigating officer in this case, telephoned "A" before the trial at a time when she was denying that she had been abused and tried to get her to change her story in a 45 minute taped conversation, and that Carter's attorney inexplicably failed to

make use of the tape, or any of the information on it, at trial.

The facts here are remarkably similar to those in a case decided by this court only two years ago, *Hart v. Gomez*, 174 F.3d 1067 (9th Cir.1999). In *Hart*, we vacated the conviction and issued a writ holding that "[a] lawyer who fails adequately to investigate and to introduce into evidence, records that demonstrate his client's factual innocence, or that raise sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." *Hart*, 174 F.3d at 1070; *see also Lord v. Wood*, 184 F.3d 1083 (9th Cir.1999); *Brown v. Myers*, 137 F.3d 1154 (9th Cir.1998); *Sanders v. Ratelle*, 21 F.3d 1446 (9th Cir.1994). In that case, as here, the defendant's denials at trial were supported only by an interested witness and were not supported by critical corroborative evidence. Here, Carter's denials at trial were supported only by his mother. Consequently, the failure of Carter's counsel to present records or other corroborative evidence might well have constituted deficient performance that could not be characterized as involving "strategic" choices. *See Hart*, 174 F.3d at 1071 ("[T]here is no reasonable strategy that could account for defense counsel's failure to introduce this corroborating evidence .... [I]t is simply inconceivable that defense counsel's decision not to introduce documentary evidence fully *corroborating* [defense witness's] testimony was a strategic one." (emphasis in original)).

The habeas affidavits set forth other specific and detailed instances of the alleged incompetence of Carter's counsel. Carter's affidavit asserts that his counsel failed to call Mr. Giddleson, a teacher at

---

the ranch, could also have testified about the cows not being fed in the summer.

**5.** Specifically, the affidavits assert that Tom Hogan, a cowboy who lived on the ranch, could have testified that the Scout vehicle was parked in the same place all summer.

Plum Valley School, to testify even though Carter informed him that Giddleson knew that some of the other children were getting their parents in trouble for abuse, that some of them were coaching "G" on how to get parents in trouble, and that "A" also knew about this. Similarly, Carter asserts, a young boy at the school also knew that "G" and "A" were planning on accusing Carter, yet he was not called to testify. This evidence, if offered in the form of credible testimony, could have persuaded reasonable jurors that a reasonable doubt existed as to the veracity of the complainants' uncorroborated story, and a failure to introduce it might in itself be sufficient to warrant a finding of ineffectiveness.

Carter further asserts that his counsel failed to cross examine Terry Bagley, a Child Protective Services employee, about various inconsistencies in the complainants' stories. Carter's mother asserts that she was present when Bagley twice asked "G" if Carter had molested her. Carter also contends that when Bagley was asked at trial to produce her report from that home visit, she instead produced a written summary of the report, claiming that she had lost her notes, and that Carter's attorney did not cross examine her on her failure to bring the report even though it had been subpoenaed; he further contends that his counsel neither made use of the written summary nor made any attempt to obtain the report.

The egregious nature of some of the alleged errors, the sheer number of them, and the nature and quality of the evidence requires that we give serious consideration to Carter's claim that his counsel's performance was both deficient and prejudicial under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). On the merits, Carter's habeas case remains unsupported because he again offered no corroborative physical or inde-

pendent testimonial support for his claims. We know of no excuse for this failure. We assume, for example, that the work records and repair receipts for the Scout vehicle would be available to Carter's present counsel. In addition, Carter could have offered affidavits from neighbors about the condition of the Scout and the practice of not feeding the cows in the summer, instead of once again simply relying on the testimony, this time in the form of affidavits, from himself and his mother. In most instances, the inexplicable failure to provide such material would be sufficient to cause us to affirm the dismissal of the petition. In this case, however, the facts set forth in the affidavits are so specific, numerous, and detailed; the absence of corroborative evidence at the trial so apparent; the charges so serious and permanently damaging; and the result at the trial so dependent on the uncorroborated testimony of the youthful accusers that: given the failure of the state to file any counter-affidavits challenging the facts alleged by Carter, we conclude that an evidentiary hearing is appropriate. Consequently, we reverse the district court's denial of Carter's § 2254 petition and remand this case for an evidentiary hearing on ineffective assistance of counsel.

REVERSED AND REMANDED.

Judge RAWLINSON.

I respectfully dissent. Harold Carter ("Carter") failed to meet the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to establish ineffective assistance of counsel. Although Carter specified several claimed deficiencies of trial counsel, he submitted no records, affidavits or other documentary support for his claim. At oral argument, Carter's appellate counsel conceded the inadequacy of Carter's showing. We require petitioners

claiming ineffective assistance of counsel to affirmatively demonstrate prejudice. *Cooper v. Calderon*, 255 F.3d 1104, 1109 (9th Cir.2001). Carter demonstrably failed to do so. Accordingly, I would affirm the district court's dismissal of Carter's petition.